### SMITH *versus* PORTER, *Ex'r.*

The assignee of a debt and of the mortgage of personal property by which the debt was secured, though the assignment was by *delivery* only, has the same right to *possession* of the property as the mortgagee would have had.

The taking of property into possession, under a just claim of right, will not charge upon a person any liability as executor *de son tort.*

A purchase from an executor *de son tort*, will not charge the purchaser as an executor *de son tort.*

ON FACTS AGREED.

DEBT on a recognizance for debt for $13,39, signed and sealed by James Kimball, and brought against this defendant as his executor.

Plea, that this defendant was never executor.

In 1849, Kimball, (whose death occurred in 1852,) owned a yoke of oxen, and mortgaged them to secure to one Tilton a note of $15,00.

By the terms of the mortgage, Kimball was under no obligation to pay till after a demand.

Tilton took possession of the oxen and permitted them to remain in the hands of Kimball, until his, Kimball's, death.

After the death of Kimball, Tilton transferred the note and mortgage by delivery to this defendant, who took the oxen into his possession and sold them, having first purchased of Kimball's widow, for $60,00, the legal and "equitable interest" which the estate had in the oxen.

At the time of the sale by her, the oxen were in the possession of one Eaton, whom she had hired to keep them for two or three weeks.

When these sales were made there had been no administration on Kimball's estate. But afterwards letters were granted to his widow.

The plaintiff claims to recover against the defendant as executor in his own wrong.

The cause was submitted to the Court for a legal adjudication.

*Kempton*, for the plaintiff.

The defendant was executor *de son tort*. R. S. c. 107, § 18; Toller on Ex'rs, 38, 39, 366, 367, 368; Starkie on Ev. part 4, p. 553, 554, 555; 2 Greenl. Ev. 274, 275, 276; *Edwards* v. *Hasben*, 2 Tenn. 587; *Mitchell* v. *Lunt*, 4 Mass. 654; *Allen* v. *Kimball*, 15 Maine, 116; *White* v. *Mann*, 26 Maine, 361.

As no demand for the payment of the $15 note had been made upon Kimball, or upon any one representing him, there was no delinquency of payment. But until a delinquency, neither the mortgagee nor his assignee had any right to take possession of the oxen.

But if such right could exist, it could be transferred by the mortgagee only by a *written assignment*.

Kimball's widow had no authority to take the oxen or to sell the right of redeeming them. The defendant could take, by a purchase from her, no greater rights than she herself had. Toller on Ex'rs, before cited. In taking and selling the oxen, the defendant interfered with the estate of Kimball, and became executor *de son tort*. The appointment of the widow, after the sale, to be executrix, cannot purge the previous wrong.

*Fuller & Edwards*, for the defendant.

To make one executor *de son tort*, he must do some act, indicating "that he has assumed the office" of executor and is acting as such. Toller on Ex. 37. Williams on Ex. 210.

There must be some *indicia* by which it may be presumed "that he has a will of deceased, not yet proved, wherein he is made executor." 2 Bl. Com. 507; 4 McCord, 286.

The facts found in the case are : —

The defendant held a mortgage of the oxen, (consequently a right to possession.)

The widow had exercised such acts as to hold *herself* out as executrix.

She had taken possession of the oxen.

Had procured their removal to some place to be kept.

Had hired them kept, and assumed the control, and

Had offered for sale, and *sold* any *legal* or *equitable* interest of deceased therein.

*She,* therefore, if any one, was the executrix *de son tort.*

The defendant may have well presumed her to have been the rightful executrix or administratrix, as she was first entitled to letters of administration.

His course of dealing shows in the absence of any thing to the contrary, that he did so suppose and so treated her.

The negotiation with, and payment to her by the defendant, clearly *negatives* all idea of his " assuming the office" of executor, and rebuts conclusively any presumption that he had a will of the deceased.

If the defendant is to be charged, it must be in consequence of his having taken *possession* of the oxen, for it does not appear that he had sold them before action brought, or administration granted.

1. The defendant was entitled to the possession by virtue of his mortgage.

He held by a conveyance from the deceased and no intermeddling with property so held can make one executor *de son tort* (even if the conveyance be fraudulent.) Toller, p. 41, note, and p. 103; 15 Maine, 116; 1 Dev. 25; 5 Ala. 41; 1 Root, 104.

His possession being lawful, and held as security, he might, however, lawfully *sell,* and though a surplus should remain, he could not be chargeable as executor *de son tort.* 2 Sm. & Marsh. 388; 4 Miss. 181; 4 Blackf. 21; 1 McCord, 107; 6 Blackf. 367; 2 McCord, 516.

2. The case finds that defendant purchased the *legal* and equit-

able "interest" of the intestate in the oxen. What more is needed to perfect his title, and how can he be said to be executor *de son tort* of *his own property* ? But suppose the sale by the widow to have been invalid at the time, what follows ? Simply this —

1. Having a valid conveyance from the deceased, the presumption of law would be, that he took possession under that, and there being no payment or tender of payment, no action could be maintained, and in 60 days his title would be absolute.

2. The grant of letters of administration to her would render such sale valid. Toller, p. 367 ; *Shillabar* v. *Wyman*, 15 Mass. 323 ; 2 Bac. Abr. 391; *Andrews* v. *Gallison*, 15 Mass. 325 ; 8 Johns. 126 ; 3 Term R. 590 ; Moore, 126.

It seems therefore —

Defendant had no legal right to possession.

He exercised no unlawful control.

He did not "*officiously* intermeddle."

He had no funds belonging to estate of the deceased.

He had purchased all right of intestate in the oxen.

The administratrix now holds the funds received, to be accounted for as part of the deceased's estate.

No "wrong" can therefore be charged upon the defendant.

RICE, J. — By purchasing the note of Betsey Tilton, with the mortgage of the oxen by which that note was secured, the defendant was subrogated to her rights as mortgagee. This gave him the right to have possession of the oxen, but not to sell them, before the mortgage had been legally foreclosed. Taking possession under his mortgage would not render him liable in this action, for one who takes possession under a fair claim of right is not chargeable as executor *de son tort*. *Femings* v. *Garratt* 1 Esp. 335.

Nor was the subsequent purchase of the legal and equitable interest that James Kimball's estate had in the oxen, of Betsey Kimball, the widow of said James, for an apparently full consideration, such an intermeddling with the estate of the deceased Kimball, as would render him liable. The widow, by the sale of the oxen to the defendant, may have rendered

herself chargeable, as executor in her own wrong, but the party, who, even knowingly, receives goods from an executor *de son tort* and deals with them as his own, does not himself thereby become an executor *de son tort*. 9 Ad. & El. 365. There is, however, nothing in this case, to show that the defendant knew that the party of whom he purchased acted without legal authority. *A nonsuit is to be entered.*

SHEPLEY, C. J., and WELLS, HOWARD and HATHAWAY, J. J., concurred.